UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


SOUTH COMMONS CONDOMINIUM ASSN.,)
ET AL.,                         )
          Plaintiffs            )
                                )
               v.               )   C.A. No. 12-cv-30102-MAP
                                )
CITY OF SPRINGFIELD, ET AL.,    )
          Defendants            )


MEMORANDUM AND ORDER REGARDING DEFENDANTS'
MOTIONS TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT
(Dkt. Nos. 13 & 27)

September 6, 2013

PONSOR, U.S.D.J.


I. INTRODUCTION

    This civil suit arises from the aftermath of a tornado

that hit Springfield on June 1, 2011, killing at least three

people and causing tremendous damage to the downtown area.

Plaintiffs are unit owners and tenants of the South Commons

Condominiums[1] ("South Commons") once located at 14 Hubbard

---

    [1] Plaintiffs are the South Common Condominium Association;
Donald E. and Judith A. Houghton (owners of Unit 1); Peter A.
and Madeline R. Zorzi (owners of Unit 2); South Main Realty,
LLC (located at 979 Main Street and owner of Units 3 & 4); SH
Realty, LLC (located at 959 Main Street and owner of Unit 5);
Joseph M. and Judith D. Lavinski (owners of Unit 6); Dale

Street, 133 Union Street, and 959-991 Main Street in
Springfield, Massachusetts.  They bring suit against
Defendants City of Springfield, Domenic J. Sarno (Mayor of
Springfield), Steven Desilets (Springfield Building
Commissioner), David Cotter (Deputy Director of Code
Enforcement, Springfield Housing Division), and Charlie
Arment Trucking, Inc. ("Arment Trucking"), for damages
suffered from the allegedly improper demolition and disposal
of Plaintiffs' buildings and their contents.

Of the seven counts in the complaint,[2] counts I and II
offer the only federal causes of action.  These are claims

---

Elliott Bass (owner of Unit 7A); Lucy M. Peterson (owner of
Units 8B & 9); Michelle J. Kaczenski (tenant on 3d floor of
Unit 1); Javier Mulero d/b/a Divalicious Salon (tenant of Unit
1); Studio One, Inc. (tenant of Units 2 & 3); Balboni
Associates, Inc. (tenant of Units 8B & 9); MBL Housing and
Development, Inc. (tenant of Unit 3); Thomas M. Bovenzi,
Trustee of Main-Hubbard Realty Trust (tenant of Units 7B and
8A); Gregory P. Zorzi (tenant of Unit 2); and Edward A.
Pessolano (tenant of a portion of Unit 1).

[2] The complaint asserts claims for deprivation of
procedural due process against all Defendants (count one);
deprivation of substantive due process against all Defendants
(count two); violation of the Massachusetts Civil Rights Act,
M.G.L. ch. 12, § 11I, against all Defendants (count three);
negligence against Arment Trucking (count four); trespass
against Arment Trucking (count five); and conversion against
Arment Trucking (count six).  In addition, seven Plaintiffs
bring a chapter 93A claim against Arment Trucking (count
seven).

under 42 U.S.C. § 1983 for violation of the Fifth and
Fourteenth Amendments to the United States Constitution
based on deprivations of procedural and substantive due
process.  Because the recent First Circuit decision in <u>San
Geronimo Caribe Project, Inc. v. Acevedo-Vila</u>, 687 F.3d 465
(1st Cir. 2012)("<u>SGCP</u>"), makes it clear that the facts as
alleged simply cannot support a claim for either procedural
or substantive due process violations, dismissal of these
two counts with prejudice is unavoidable.  Having dismissed
the federal claims, the court will also dismiss the balance
of the complaint, which relies only on state law, without
prejudice to the re-filing of these claims in state court.
Given these rulings, it will be unnecessary to rule on
ancillary motions attempting to limit the materials that can
be considered in relation to Defendants' motions.

The constitutional analysis here will likely frustrate
both sides, since it concludes that the passionate
disagreement between the parties over the propriety of
Defendants' actions is irrelevant.  Plaintiffs vigorously
contend that Defendants' over-hasty demolition of their
buildings and refusal to allow them access to their property

was entirely unjustified.  Defendants defend their conduct
with equal ardor, contending that quick action was needed to
protect the public safety and welfare.  In the end, this
dispute does not matter.  The analysis below will assume --
without needing to decide -- that a mistake, possibly an
egregious mistake, was made.  Nevertheless, as Chief Judge
Lynch stated in <u>SGCP</u>, "[A] mere mistake by officials in
exceeding the limits of their defined authority is not the
stuff of a federal due process claim."  <u>Id.</u> at 486.  Painful
as the demolition may have been for Plaintiffs, a "mere
mistake" is the most that any jury could find happened here.
It is a hard truth that many very unfortunate things happen
that are not violations of the United States Constitution.
What happened here was, at most, one of them.

## II. <u>BACKGROUND</u>

As with all motions to dismiss, the court accepts as
true the well-pleaded factual allegations contained in the
complaint, drawing reasonable inferences in Plaintiffs'
favor.  <u>Gargano v. Liberty Intern. Underwriters, Inc.</u>, 572

F.3d 45, 48 (1st Cir. 2009).[3]  To set the stage, an

examination of the statutory framework governing the

condemnation and demolition of a building by a local

authority is necessary.

A.   Statutory Framework.

Massachusetts law provides for both pre- and post-

deprivation process in the condemnation and demolition of a

building.  Once a local building commissioner becomes aware

of the dangerous condition of a structure, chapter 143,

section 6 provides that the inspector "shall inspect" the

structure and "forthwith in writing notify the owner ... to

remove it or make it safe."  Mass. Gen. Laws ch. 143, § 6;

780 C.M.R. § 116.2 (8th ed., effective August 6, 2010).

After receiving such notice, an owner has until noon the

following day to begin to make the structure safe or secure.

_____

[3] For purposes of evaluating whether Plaintiffs have made a claim for violation of due process, the court has confined itself to the facts alleged in the complaint. However, to fill in the background of the parties' dispute and make the source of their vehement disagreement more understandable, the court has drawn some additional facts from the affidavits of Defendant Steven Desilets (Dkt. No. 14, Ex. 1) and Plaintiff Peter A. Zorzi (Dkt. No. 17, Ex. 1).  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (noting that review of official public documents, and documents the authenticity of which is not disputed, is permissible in assessing a motion to dismiss).

Ch. 143, § 7; 780 C.M.R. § 116.3.[4]  However, "if the public
safety so requires and if the aldermen or selectmen so
order, the inspector of buildings may immediately enter upon
the premises with the necessary workmen and assistants and
cause such unsafe structure to be made safe or taken down
without delay."  Ch. 143, § 7; 780 C.M.R. § 116.3.

If the inspector demolishes the dangerous structure
pursuant to section 7 or 9, the costs and charges of the
demolition "shall constitute a debt due the city or town
upon completion of the work and the rendering of an account
therefor to the owner of such structure, and shall be
enforced in an action of contract."  Ch. 143, § 9; 780
C.M.R. § 116.5.  The only way to prevent the city or town
from recovering this forfeiture is to have the original
order of demolition annulled by a jury.  Ch. 143, § 10; 780
C.M.R. § 116.6; see also ch. 139 § 2 (providing the remedy

---

[4]  The letters from Defendant Desilets to Plaintiffs
notifying them of the condemnation and demolition of their
properties cited regulatory authority under the 7th edition
of the Code of Massachusetts Regulation, which was concurrently
effective with the 8th edition from August 6, 2010 until fully
retired on February 6, 2011.  (Dkt. No. 1, Ex. C.)   Section
5121.3 in the 7th edition, cited by Defendants, corresponds to
section 116.3 of the 8th edition; section 121.5 in the 7th
edition, cited by Defendants, corresponds to section 116.5 of
the 8th edition.

to challenge an order issued by the building inspector).

Section 10 provides the remedy of an owner aggrieved by an order to make safe or remove a dangerous structure.  An owner can challenge such order by appealing the order to the superior court for the county where the structure is located.  Ch. 143, § 10 (providing that an owner may proceed under ch. 139, § 2, for a remedy when aggrieved); 780 C.M.R. § 116.6.  See generally, Gallant v. City of Fitchburg, 739 F. Supp. 2d 39, 41-2 (D. Mass. 2010) (discussing the statutory scheme for orders to make buildings safe and secure and the remedies available to challenge such orders). Although this section allows for a challenge to the order, the inspector's actions are not halted by such a challenge. Ch. 143, § 10 (stating that "no provision of [ch. 139, § 2] shall be construed so as to hinder, delay or prevent the local inspector acting and proceeding under section nine"); 780 C.M.R. § 116.6.

Consequently, in any circumstance where an owner desires to challenge the action taken by the building inspector -- whether it be the original order by the building inspector, or the immediate demolition of a

-7-

structure deemed hazardous to public safety, or the liens
for the costs of demolition -- the owner must proceed under
section 2 of chapter 139.  The owner must commence a civil
action in superior court within three days after the service
of the challenged order.  Ch. 139, § 2.  After a jury trial,
if the owner is successful in challenging the order, he may
recover from the city damages and costs.  Id.; see Aubuchon
v. Massachusetts, 933 F. Supp. 90, 93 (D. Mass. 1996)
(evaluating due process claim after city demolished the
plaintiff's building and stating that "[i]f the jury annuls
the demolition order, the successful plaintiff is entitled
to recover damages and costs"); Russell v. City of New
Bedford, 74 Mass. App. Ct. 715 (2009) (affirming judgment in
the plaintiff's favor that found the city liable for
negligently demolishing plaintiff's buildings).

B.   Facts.

In 1985, Plaintiff Peter Zorzi acquired 14 Hubbard
Street, 133 Union Street, and 959-991 Main Street, the
buildings known as South Commons, for purposes of
preservation and refurbishment.  The buildings were
constructed between 1874 and 1930 in the style known as

-8-

"Italianate."  On October 31, 1985, the buildings were recognized by the National Parks Service and placed on the list of the National Register of Historic Places: the building at 14 Hubbard Street was designated as "Historically Significant."  After the acquisition of South Commons, Peter Zorzi and his architectural firm, Studio One, renovated and refurbished the buildings, converting them to condominiums for both residential and business uses.

On June 1, 2011, at approximately 4:18 p.m., a tornado tore through downtown Springfield, causing extensive damage. Governor Deval Patrick and Defendant Springfield Mayor Domenic Sarno both declared a state of emergency, and travel to certain areas of the city was restricted, even to local residents within affected areas.  Immediately following the tornado, Springfield deployed police officers who emptied South Commons of its residents and refused entry, under penalty of arrest, to anyone, including Plaintiffs, who identified themselves as owners or tenants.

At the first opportunity the following day, Peter Zorzi contacted a contractor with whom he had worked on the buildings in the past and discussed securing and repairing

the buildings.  He also attempted to contact the City, through the Mayor's office, as well as Defendant Building Commissioner and Defendant Deputy Director of Code Enforcement, to request access to his personal and business property in the buildings.

At the actual site of South Commons, the City consistently denied Plaintiffs permission to enter the buildings to retrieve valuable personal or business items. Whenever any Plaintiffs attempted to access the buildings, they were stopped by a member of either the Springfield Police or Fire Department or the National Guard and were told they would be arrested if they continued to attempt to enter.

On June 2, 2011, the day after the tornado, Defendant Desilets, by helicopter and in person, surveyed the damage done to South Commons.  He judged the buildings to be in a state of collapse and concluded "that [they] posed an immediate threat to the public."  (Dkt. No. 14, Ex. 1, Desilets Aff'd at ¶ 5.)

At approximately 10:00 p.m. that same day, at the direction of the City and other named Defendants, Defendant

-10-

Arment Trucking demolished the buildings at South Commons and removed all debris, including potentially salvageable items of personal or business property.  Plaintiffs were not given advance notice of or an opportunity to challenge the demolition, nor were Plaintiffs given an opportunity to remove personal or business belongings prior to demolition. Moreover, after demolition of the buildings, Plaintiffs were refused access even to the debris field in order to retrieve items clearly in view.

Nearly a week _after_ Defendant Arment Trucking had demolished and disposed of the properties, the City issued condemnation orders for each of the units and buildings in South Commons.[5]  These orders stated that, due to the damage

_____

[5] On June 8, 2011, the City and named Defendants issued orders, signed by Defendant Cotter, Deputy Building Commissioner, declaring Units 2, 4, and 5 unfit for human habitation, condemned, and to be vacated immediately. (Dkt. No. 1, Ex. 11.)  On June 9, 2011, the City and named Defendants issued orders, signed by Defendant Desilets, Building Commissioner, condemning Units 8B and 9 and ordering demolition immediately. (Dkt. No. 1, Ex. 12.)  On June 13, 2011, the City and named Defendants issued orders, signed by Desilets, condemning Units 1, 3, 6, 7A, 7B, 8A, 9, and 10, and ordering demolition immediately.  (Dkt. No. 1, Ex. 13.)  On June 14, 2011, the City and named Defendants issued orders, signed by Desilets, condemning 959 Main Street and ordering demolition immediately.  (Dkt. No. 1, Ex. 14.)  Again, on June 21, 2011, the City and named Defendants issued orders,

sustained from the tornado, the buildings were unfit for human habitation and "constituted a danger to the life, welfare and safety of the surrounding community." (Dkt. No. 1, Ex. 12 at 2.)  Finally, the orders stated that, pursuant to his authority under the Massachusetts State Building Code, the Building Commissioner ordered the emergency condemnation and demolition of South Commons.  (E.g. Dkt. No. 1, Ex. 13 at 3.)  Obviously, none of these orders issued until the properties in question were demolished and their contents, in most cases, hauled away.

Plaintiffs state, and it is undisputed, that they were never given any notice prior to the demolition of South Commons.  Additionally, Plaintiffs allege that Defendants failed to conduct any engineering studies or similar assessments to verify the safety and salvageability of South Commons.  Although the question is hotly disputed, for purposes of the ruling on Defendants' Motions to Dismiss, the court will assume that the demolished structures were salvageable and need not have been demolished.  Moreover --

---

signed by Desilets, condemning 959 Main Street and ordering demolition immediately.   (Dkt. No. 1, Ex. 15.)

again, though the issue is disputed -- the court will assume
that the structures might have been made safe enough for
Plaintiffs to retrieve and remove items of personal and
business value.

### III. <u>DISCUSSION</u>

To survive a Rule 12(b)(6) motion to dismiss, the
complaint must contain "sufficient factual matter" to state
a claim for relief that is actionable as a matter of law and
"plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,
678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.
544, 570 (2007)); Fed. R. Civ. P. 12(b)(6).  Dismissal is
appropriate if the complaint does not set forth "factual
allegations, either direct or inferential, respecting each
element necessary to sustain recovery under some actionable
legal theory." <u>Centro Medico del Turabo, Inc. v. Feliciano
de Melecio</u>, 406 F.3d 1, 6 (1st Cir. 2005) (internal citation
omitted).

A.    <u>Count One -- § 1983 Procedural Due Process Claim</u>.

Count One alleges that Defendants deprived Plaintiffs
of procedural due process by demolishing the buildings and
refusing Plaintiffs access to their property without giving

-13-

them prior notice and opportunity to challenge Defendants'
actions.  For Plaintiffs to make out a claim for procedural
due process, they must establish that they enjoyed a
protected property interest and that Defendants acted under
color of state law in depriving them of this interest
without constitutionally adequate process.  SGCP, 687 F.3d
at 478; Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st
Cir. 2011); Gallant, 739 F. Supp. 2d at 46.

    At this stage, Defendants do not dispute that
Plaintiffs have a protected property interest and that
Defendants acted under color of state law.  See SGCP, 687
F.3d at 478.  Moreover, Plaintiffs are not asserting that
they were deprived of property without due process by an
established state procedure.  Id.; see, e.g., Gallant, 739
F. Supp. 2d at 47 (denying motion to dismiss the plaintiff's
procedural due process claim for wrongful demolition, where
claim did not rely solely on an alleged violation of state
law but challenged the constitutional adequacy of the
process afforded to the plaintiff, in a non-emergency
situation, prior to demolition).  The issue for the court
then is whether Plaintiffs have made out a viable claim for

violations of their federal due process rights where
Defendants demolished their property without providing them
any predeprivation hearing.  SGCP, 687 F.3d at 478.

It is well established that the Constitution's due
process clause does not require a predeprivation hearing in
all cases.  Logan v. Zimmerman Brush Co., 455 U.S. 422, 436
(1982).  [U]nder Parratt-Hudson and its progeny,[6] post-
deprivation remedies are constitutionally sufficient where
there exists "the necessity of quick action by the State or
the impracticality of providing any meaningful
predeprivation process."  Parratt v. Taylor, 451 U.S. 527,
539 (1981); Zimmerman Brush Co., 455 U.S. at 436.  Where the
loss of a property interest occurs, not by operation of an
established state procedure, but by the error of the state
actor, the absence of a predeprivation hearing alone cannot
constitute a due process violation.  Zimmerman Brush Co.,
455 U.S. at 435-36; SGCP, 687 F.3d at 478.  This limitation
on the requirement of a predeprivation remedy makes sense,

_____

[6] This doctrine emerged from the Supreme Court's decisions
in Parratt v. Taylor, 451 U.S. 527 (1981), and Hudson v.
Palmer, 468 U.S. 517 (1984), and was further developed by
Zinermon v. Burch, 494 U.S. 113 (1990).  See generally SGCP,
687 F.3d 465, 478-81 (1st Cir. 2012) (discussing the general
parameters of the Parratt-Hudson doctrine).

since, obviously, where a mistake has caused the deprivation, no hearing or other process would be effective in heading off an official's blunder.

Zinermon v. Burch, 494 U.S. 113, 139 (1990), sets limits on when the Parratt-Hudson doctrine will insulate the state from liability for failing to provide predeprivation process. SGCP, 687 F.3d at 478-80. In Zinermon, the Supreme Court found that the state violated the Constitution's procedural due process requirements when it admitted to a mental hospital a person who sought voluntary admission, when the person was not mentally competent to give consent to the admission. The Court found the Parratt-Hudson doctrine inapplicable on the facts and held that the plaintiff had successfully stated a claim under § 1983.

The First Circuit distilled the holding in Zinermon down to a three-part inquiry to determine whether the Parratt-Hudson doctrine applied to preclude a § 1983 suit against a state based on the absence of a predeprivation hearing. SGCP, 687 F.3d at 480. These three considerations were: first, whether the risk of deprivation was predictable or foreseeable; second, whether a predeprivation process was

possible (_i.e._, whether additional procedural safeguards were reasonably available); and third, whether the conduct of the state officials was "'unauthorized' in the sense used in Parratt and Hudson."[7]   SGCP, 687 F.3d at 480. Accordingly, where the Parratt-Hudson doctrine applies, there is no basis for a § 1983 suit alleging a procedural due process claim based solely on the absence of a predeprivation process.   See id.  Conversely, where the Parratt-Hudson doctrine does not apply, the Supreme Court's decision in Zinermon controls: the state must provide some kind of hearing before depriving a person of a protected interest.   Zinermon, 494 U.S. at 127; SGCP, 687 F.3d at 490.

   1.   The First Circuit's SGCP and Herwins Decisions.

   In SGCP, the First Circuit followed this three-step analysis in determining that the Parratt-Hudson doctrine applied to preclude a procedural due process claim where a developer sued over "the mistaken invocation by state officials of emergency powers granted by state law to stay a

---

   [7] The third consideration can also be characterized as an inquiry into the scope of discretion conferred on the state actor.   SGCP, 687 F.3d at 482. If the discretion is very broad, then the state's "duty to see that no deprivation occur without adequate procedural protections" is greater.   Id. at 480; Zinermon, 494 U.S. at 138.

major construction project."  687 F.3d at 469-70.  In that
case, the plaintiff had been granted several permits for the
construction of a mixed residential, commercial, and tourism
project near a historic structure in Puerto Rico.
Ordinarily, Puerto Rican law provided that the relevant
overseeing agency could revoke such permits and suspend
construction if the agency issued a show cause order and
promptly proceeded to full formal hearings.  <u>Id.</u> at 473.
However, the law also permitted the agency to invoke "an
emergency adjudicatory procedure" in cases where there was
imminent danger.  <u>Id.</u>

    The <u>SGCP</u> defendants invoked the emergency procedure and
issued an order suspending the plaintiff's permits and
construction for sixty days without holding full
adjudicative hearings.  The plaintiff challenged the orders
before the Puerto Rico Supreme Court, which held in part
that the state defendants erred in invoking the emergency
adjudicatory procedure because there had been no imminent
danger present.  <u>Id.</u> at 477.  Thereafter, the plaintiff
filed suit in federal court, based on the Puerto Rico
Supreme Court's decision, alleging violation of its federal

procedural due process rights.  When the defendants moved
for dismissal, the district court granted the motion,
finding in part that the plaintiff failed to state a claim
for a federal due process violation because the <u>Parratt</u>-
<u>Hudson</u> doctrine applied.

Before the First Circuit, the <u>SGCP</u> plaintiff argued
that the <u>Parratt</u>-<u>Hudson</u> doctrine did not apply.  In keeping
with the three-step <u>Zinermon</u> analysis, the plaintiff
asserted that the deprivation of its property rights was
predictable under the statutory scheme, that the state could
have enacted better regulations to guide officials' actions
under the procedural protocols, and that the conduct by the
state officials was authorized by state laws and therefore
did not constitute the kind of mere mistake for which no
predeprivation process would be effective.  The First
Circuit disagreed on each point.

On the first point, the court rejected the plaintiff's
contention that the deprivation in <u>SGCP</u> was foreseeable as
characterized in <u>Zinermon</u>.  There, the Supreme Court found
that, in dealing with persons suffering mental health
crises, it was predictable that some persons presenting

themselves for voluntary admission might not be mentally competent to give consent to admission.  The First Circuit rejected the notion that the mere likelihood that humans sometimes err (and thereby interfere with a plaintiff's property interest) inevitably generates the kind of foreseeability the Supreme Court was concerned with in Zinermon.  "Zinermon cannot be reduced to the proposition that whenever there is risk of error, the protections afforded by Parratt-Hudson do not apply."  Id. at 487.

On the second point, the court rejected the plaintiff's contention that there was "practicable additional predeprivation process that could be implemented."  Id.  "In a situation involving a potential emergency, as here, to require additional predeprivation safeguards would defeat the very purpose of the emergency statute."  Id. at 488.

Finally, the court rejected the plaintiff's contention that the relevant state statute conferred uncircumscribed discretion and therefore compelled a predeprivation process. The statute at issue did permit the state to suspend the regular predeprivation process, but only when certain emergency conditions existed.  Moreover, the statute

required an order by the agency invoking the emergency
procedure and describing the emergency conditions that
existed and rose to a certain level of severity.  Id. at
481.  The court concluded that the discretion granted to the
defendant agency to determine whether the emergency
procedure applied "did not amount to the type of grant of
broad and standardless discretion in Zinermon."  Id. at 483.

In affirming the trial court's dismissal of the
plaintiff's claims in SGCP, the First Circuit relied on its
prior decision in Herwins v. City of Revere, 163 F.3d 15
(1st Cir. 1998).  In Herwins, the plaintiff brought a
procedural due process claim against the city and its
building inspector for closing his rental apartment without
prior notice or a hearing.  Id. at 17.  In addition to
alleging that the building inspector was mistaken in finding
that there was an emergency, the plaintiff alleged that the
building inspector "had falsely or recklessly reported
violations of the building code" so as to shut down the
plaintiff's building.  SGCP, 687 F.3d at 489 (discussing
Herwins).  Thus, the Herwins plaintiff's due process claim
alleged both negligent and intentional action by a state

-21-

actor in depriving him of due process.

Despite these allegations, the First Circuit in <u>Herwins</u> concluded that the plaintiff was not entitled to a predeprivation hearing.  Where an emergency condition exists, the court held, state officials may take immediate action to shut down a residential building.  "Where an official errs in declaring an emergency, the only feasible procedure is a post-deprivation remedy. . . ." <u>Herwins</u>, 163 F.3d at 19.  The court concluded that if a state official is authorized to act, then his or her "<u>improper</u> use is exactly the kind of 'random and unauthorized' conduct that the local government had no duty (and indeed no practical way) to forestall through a predeprivation hearing -- a procedure itself inconsistent with true emergency conditions." <u>Id.</u> (emphasis in original) (quoting <u>Hudson</u>, 468 U.S. at 533).

Ultimately in <u>SGCP</u>, the First Circuit determined that the <u>Parratt</u>-<u>Hudson</u> doctrine did apply on the facts before it: the defendants were not required under the circumstances to provide the plaintiff with a predeprivation hearing.  As there were no allegations that the plaintiff's post-deprivation remedies were constitutionally inadequate, the

First Circuit affirmed the district court's dismissal of the plaintiff's procedural due process claim.  <u>Id.</u> at 490.

    2.   <u>Application of SGCP and Herwins to Plaintiffs'</u>
        <u>Claim</u>.

Plaintiffs here cannot escape the First Circuit's holdings in <u>SGCP</u> and <u>Herwins</u>.  In both cases, the plaintiffs alleged mistaken action by defendant state officials in invoking emergency powers to deprive the plaintiffs of their property without a predeprivation hearing.  Moreover, both plaintiffs had previously obtained judicial determinations that the state actors' actions were in fact incorrect. Indeed, in the case of <u>Herwins</u>, the state actor was found to have acted falsely or recklessly.  Nonetheless, in both cases the First Circuit determined that it was constitutionally sufficient "to leave such random and individual errors to be corrected by state courts and agencies."  <u>Herwins</u>, 163 F.3d at 19; <u>SGCP</u>, 687 F.3d at 490 (stating that the state agency's error in judgment in invoking emergency powers was "the very kind of unanticipated mistake that is due to individual error" and placed the case firmly within the <u>Parratt</u>-<u>Hudson</u> doctrine).

Plaintiffs here urge the court to follow <u>Gallant v.</u>
<u>City of Fitchburg</u>, 739 F. Supp. 2d 39, 47 (D. Mass. 2010)
(Saylor, J.), in which the court declined to dismiss a
procedural due process claim where the defendants had
allegedly demolished the plaintiff's building wrongfully.
Judge Saylor concluded that the complaint sufficiently made
out a procedural due process claim, because the statutory
procedures in place for predeprivation hearings could be
considered constitutionally inadequate in that case.
<u>Gallant</u>, however, arose from a non-emergency situation,
where a predeprivation hearing was easily available.  739 F.
Supp. 2d at 47 n.9.  Here, on the other hand, Defendants
were invoking their emergency powers, perhaps mistakenly,
but indisputably in a situation where immediate action was
deemed by them to be essential.  Since this distinction is
crucial, <u>Gallant</u> does not assist Plaintiffs.

Assuming they are proved as alleged, the magnitude of
Plaintiffs' losses here, especially given the historical
significance of South Commons and the care that went into
rehabilitating the buildings, was substantial.  The loss of
cherished personal and important business property must also

have been deeply upsetting.  The issue here is not, however, whether Plaintiffs are entitled to compensation -- if they properly invoke state law and can prove their case, they may well be able to obtain redress in a state court proceeding -- but whether their injury rises to the level of a <u>constitutional</u> violation, cognizable in this federal court. On this narrow but profound issue, the court is compelled to recognize the "paramount governmental interest" in the "[p]rotection of the health and safety of the public." <u>Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.</u>, 452 U.S. 264, 300 (1981).  In these circumstances, where summary administrative action was permitted by statute, and where the situation colorably supported invocation of that statute, due process did not require a hearing before a deprivation of a property right.  <u>Id.</u>  As <u>Hodel</u> teaches, "deprivation of property to protect the public health and safety is '[o]ne of the oldest examples' of permissible summary action."  <u>Id.</u> (citation omitted).  Even where an error may have occurred, a federal lawsuit based on a violation of constitutional due process will not lie in these circumstances.

In conclusion, the court finds that, under the First Circuit's holdings in SGCP and Herwins, the Parratt-Hudson doctrine, and not Zinermon, governs here.  Defendants were not required under the circumstances to provide Plaintiffs with a predeprivation hearing.[8]  The complaint thus fails to state a claim for a procedural due process violation.[9]  Count one will therefore be dismissed against all Defendants.

_____

[8]  To the extent that Plaintiffs challenge the adequacy of the state's post-deprivation remedies, the court finds that those arguments fail.  Other than the bald assertion that "the statutory remedies provided by the [state] are inadequate to address the injuries suffered" (Dkt. No. 1, Pls.' Compl. ¶ 40), there are no other facts pled in support of this contention.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (stating that "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (alteration in original) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  Moreover, as the court noted earlier, Massachusetts courts do provide aggrieved persons both an opportunity to be heard as well as, where appropriate, damage awards in cases of wrongful demolition.  See Russell v. City of New Bedford, 74 Mass. App. Ct. 715 (2009); Boorstein v. City of Boston, 28 Mass. App. Ct. 313 (1990)  City of Worcester v. Eisenbeiser, 7 Mass. App. Ct. 345 (1979).

[9]  In their complaint, Plaintiffs attempt to separate claims for the destruction of the South Commons buildings from claims based on the deprivation of their personal and business property.  Defendants' actions all arose, however, out of the same emergency environment. The constitutional analysis of Defendants' conduct (even assuming their actions were mistaken) is therefore the same, whether applied to real or personal property.

B.  <u>Count Two -- § 1983 Substantive Due Process Claim</u>.

Count Two alleges that Defendants deprived Plaintiffs
of substantive due process in demolishing South Commons.
Defendants argue that Plaintiffs have failed to allege any
facts that would give rise to a substantive due process
claim under § 1983 because none of the facts alleged
describe conduct that is "shocking to the conscience."
<u>County of Sacremento v. Lewis</u>, 523 U.S. 833, 836 (1998).
Plaintiffs counter that they have alleged sufficient facts,
that if proven true, might be found by a jury to "shock the
conscience." <u>Gallant</u>, 739 F. Supp. 2d at 45.  The court
must determine if, as a matter of law, Plaintiffs have
failed to make out a claim for relief.  <u>Id.</u> at 48.

For Plaintiffs to adequately allege a claim for
violation of substantive due process, they must show that
(1) Defendants violated a right protected by the substantive
Due Process Clause and (2) Defendants' actions "shock the
conscience." <u>Martinez v. Cui</u>, 608 F.3d 54, 64 (1st Cir.
2010).  At this stage, as noted above, Defendants do not
dispute that Plaintiffs are alleging violation of a
protected right.  The question is whether the factual

allegations, if proven, adequately describe state action that "<u>in and of itself</u> [was] egregiously unacceptable, outrageous, or conscience-shocking." <u>Amsden v. Moran</u>, 904 F.2d 748, 754 (1st Cir. 1990) (emphasis in original).

Although "each determination of whether state conduct shocks the conscience is necessarily fact-specific," the First Circuit has provided some general guidelines. <u>Cruz-Erazo v. Rivera-Montanez</u>, 212 F.3d 617, 623 (1st Cir. 2000); <u>Pagan v. Calderon</u>, 448 F.3d 16, 32 (1st Cir. 2006). On a basic level, substantive due process protects the individual against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." <u>Lewis</u>, 523 U.S. at 846. The First Circuit has described substantive due process claims as requiring that the state's conduct be either "physically intrusive or violent" or must "strike at the basic fabric of [a] protected relationship, such as the parent-child relationship." <u>Cruz-Erazo</u>, 212 F.3d at 623.

The Supreme Court has "rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and [has] held that the

Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." <u>Lewis</u>, 523 U.S. at 848-9.  The First Circuit too has cautioned that allegations of violations of state law or other regulatory process by state officials "do not ordinarily rise to the level of constitutional deprivation." <u>PFZ Properties, Inc. V. Rodriguez</u>, 928 F.2d 28, 31 (1st Cir. 1991) (overruled in part by <u>SGCP</u>, 687 F.3d at 490 & n.20 (stating that, to the extent that dicta in previous decisions suggested that state officials departing from established processes can always escape § 1983 liability because of state tort remedies, "that dicta is overruled")).

Plaintiffs point to First Circuit authority holding that "[t]here is no scientifically precise formula for determining whether executive action is -- or is not -- sufficiently shocking to trigger the protections of the substantive due process branch of the Fourteen Amendment." <u>Pagan</u>, 448 F.3d at 32.  Accordingly, Plaintiffs argue that the determination of whether Defendants' conduct "shocks the conscience" is a fact-specific inquiry and that, for

purposes of a motion to dismiss, they have alleged

sufficient facts to preserve their claims for consideration

by a jury.  See Gallant, 739 F. Supp. 2d at 48 (denying the

defendants' motion to dismiss the substantive due process

claim and stating that resolution of the issue of whether

the defendants' actions "shock the conscience" should "await

further development of the record").

The argument is not persuasive.  Plaintiffs'

allegations in the complaint -- even if developed further or

proven at trial -- are simply insufficient to support a

claim for violation of substantive due process.  As

described at length above, Plaintiffs allege that Defendants

demolished South Commons and took their personal property

without providing Plaintiffs notice or opportunity to be

heard.  (Dkt. No. 1, Pls.'s Compl. ¶ 31, 36-38.)  They also

allege that Defendants failed to undertake any "engineering

studies or similar investigations or analyses . . . to

verify the safety and salvageability of the affected

structures." (Complaint ¶ 32, Dkt. No. 1.)

It is significant, as a preliminary matter, that the

allegations underlying Plaintiffs' substantive due process

claims are to a very large extent indistinguishable from those underlying Plaintiffs' procedural due process claim. This is usually the hallmark of a weak substantive due process claim. <u>Amsden v. Moranu</u>, 904 F.2d 748, 757 (1st Cir. 1990) (dismissing plaintiffs' substantive due process claim and stating that plaintiffs' allegations amounted to nothing more that an attempt "to paint the landscape a shade darker by coloring essentially the same factual predicate with the hues of substantive due process").

Furthermore, the allegations in the complaint amount to nothing more than the claim that Defendants were negligent, perhaps even grossly negligent, in acting under the authority vested in them under Massachusetts law. <u>See Lewis</u>, 523 U.S. at 848 (citing <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986), for the maxim that substantive due process standards apply to the deliberate decisions of government officials). It is crystal clear that mere allegations of mistakes by state officials, even if committed in bad faith, are insufficient to raise a claim for a violation of substantive due process. <u>Amsden</u>, 904 F.2d at 757 ("Our cases make clear that a regulatory board does not transgress

-31-

constitutional due process requirements merely by making

decisions 'for erroneous reasons' or by making 'demands

which arguably exceed its authority under the relevant state

statutes.'"); DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st

Cir. 2005).

It is only fair to recognize, once more, that the

losses suffered by Plaintiffs, if proved as alleged, were

severe.  However, there is no "absolute, generalized

substantive due process right" to one's property." Cf.

Martinez, 608 F.3d at 66 (stating that an individual's

interests are defined against the government's competing

legitimate interests in a variety of contexts).  Beyond the

alleged procedural deficiencies, Plaintiffs do not allege

any facts that give rise to a reasonable inference that the

City went about demolishing Plaintiffs' buildings in a

manner that "shocks the conscience." See id. at 119.  For

this reason, the motion to dismiss Count Two will be allowed

as to all Defendants.

C.   Remaining State Claims.

If the court has "dismissed all claims over which it

has original jurisdiction," the court may also "decline to

exercise supplemental jurisdiction" over the remaining claims.  28 U.S.C. § 1367(c)(3).  Here, the court has dismissed all federal claims, with the result that only the state claims against Defendants remain.  "In deciding whether or not to retain jurisdiction on such an occasion, the . . . court must take into account concerns of comity, judicial economy, convenience, fairness, and the like." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996).  Given the early stage of litigation, the court will exercise its discretion to decline supplemental jurisdiction over the remaining state claims.  The issues of potential liability and compensation in play here involve application of complex state law and regulation, as to which the state courts have the final say.  These issues lie more comfortably within the competence of the Massachusetts judiciary.  The court will therefore dismiss these state law claims without prejudice to Plaintiffs' assertion of them in state court.  McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 74 (1st Cir. 2003) ("When federal claims are dismissed before trial, state claims are normally dismissed as well.").

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the motion to dismiss counts one and two is allowed, and these counts are hereby dismissed with prejudice for failure to state a claim. As to the state law claims, counts three through seven, the motion is also allowed, but these counts are hereby dismissed without prejudice to re-filing in state court. Finally, to the extent that Plaintiffs have moved to strike the affidavit of Steve Desilets on the basis of the spoliation doctrine, (<u>see</u> Pls.' Opp'n, Dkt. No. 17 at 16), that motion is hereby DENIED as moot.

In sum, Defendants' Motions to Dismiss (Dkt. Nos. 13 & 27) are hereby ALLOWED. The clerk will enter judgment of dismissal. This case may now be closed.[10]

It is So Ordered.

```
                               /s/ Michael A. Ponsor
                              MICHAEL A. PONSOR
                              U. S. District Judge
```

---

[10] Defendants' motions were under advisement for an excessive period of time. The court apologizes to the parties for this delay.